IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

**BRADLEY KRAMER,**

*Plaintiff*

v.     Case No. 4:26-cv-00023

**ERIK ELLIOTT (INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF DETECTIVES OF THE CLARK COUNTY SHERIFF'S DEPARTMENT),**
**MARK GRUBE (INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ASSISTANT CHIEF OF THE CLARK COUNTY SHERIFF'S DEPARTMENT),**
**LIEUTENANT JEFFREY HEARON (INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A DETECTIVE FOR THE INDIANA STATE POLICE),**
**CLARK COUNTY SHERIFF'S DEPARTMENT, AND**
**INDIANA STATE POLICE,**

*Defendants*

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL
### INTRODUCTION, JURISDICTION, AND VENUE

1. This is a civil rights action seeking substantial damages under 42 U.S.C. § 1983 to address a coordinated campaign of official retaliation and misconduct, coupled with related state law tort

claims. Plaintiff seeks to redress the deprivation of his fundamental rights, privileges, and immunities secured by the Constitution and laws of the United States, including the First Amendment's protection of free speech, the Fourth Amendment's guarantee against illegal search and seizure, and the Fourteenth Amendment's guarantee of due process and liberty interest in reputation and employment.

2. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 (federal question).

3. This Court has supplemental jurisdiction over the related state law tort claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to this Complaint occurred within Clark County, Indiana, and the Defendants reside and/or conduct business within this District.

**PARTIES**

5. Plaintiff, BRADLEY KRAMER, is an adult resident of Clark County, Indiana, and was employed by the Clark County Sheriff's Department for nine years, resigning in 2023.

6. Defendant ERIK ELLIOTT is an adult individual who was, at all times relevant to the Complaint, acting under color of state law and within the scope of his authority as the Chief of Detectives for the Clark County Sheriff's Department. Defendant Elliot is sued in his individual capacity for his own malicious and unconstitutional acts, and in his official capacity as a representative of the policy-making authority of the CCSD regarding investigations and internal management.

7. Defendant MARK GRUBE is an adult individual who was, at all times relevant to the Complaint, acting under color of state law as Assistant Chief of the Clark County Sheriff's Department. Defendant Grube is sued in his individual capacity for his actions in initiating and disseminating false allegations, and in his official capacity.

8. Defendant CLARK COUNTY SHERIFF'S DEPARTMENT (hereinafter CCSD) is a municipal entity, responsible for the training, supervision, and discipline of its officers and agents.

9. Defendant LIEUTENANT JEFFREY HEARON is an adult individual who was, at all times relevant to the Complaint, acting under color of state law as an agent (Lieutenant/Detective) of the Indiana State Police. Defendant Hearon is sued in his individual capacity for his active, knowing participation in the defamation and in his official capacity as a representative of the ISP.

10. Defendant INDIANA STATE POLICE (hereinafter ISP) is a state entity that, through its agents, most notably Lieutenant Jeffrey Hearon, participated in the systematic and coordinated scheme to defame Plaintiff and interfere with his employment. The ISP is named as a Defendant for the purposes of the state law tort claims alleged herein.

**STATEMENT OF FACTS**

11. Plaintiff Bradley Kramer was an employee of the CCSD for approximately nine (9) years, serving primarily as a Detective in the Investigations Division.

12. Throughout the majority of his tenure, Mr. Kramer maintained an exemplary record and performance rating, consistently earning the respect of his peers and superiors for his commitment to professional, non-political law enforcement standards.

13. The events leading to the violations of Plaintiff's constitutional rights began in 2022 when Plaintiff, in the course of his official duties, came into conflict with a superior who would later become his direct supervisor.

14. In 2023, a critical case involving a missing and endangered juvenile was assigned to then-Detective Erik Elliott. Established law enforcement protocol, mandatory training standards, and state regulations require immediate, urgent action in such cases.

15. Defendant Elliott flagrantly disregarded this mandatory protocol, completely refusing to even speak with the family of the missing juvenile. Compounding this severe lapse, he then filed an official case report that falsely stated the juvenile was located and safe, asserting that the child was merely out of state in the company of another individual.

16. Due to Defendant Elliott's critical failure to act and his subsequent false reporting, the juvenile was never searched for and tragically, the juvenile's remains were later discovered to have been in Clark County the entire time. This conduct, including the filing of a falsified official document to cover the initial negligence, constitutes gross professional misconduct, severe dereliction of duty, and a profound breach of public trust and safety.

17. Plaintiff Kramer subsequently reviewed the case file, discovered Defendant Elliott's false reporting and critical failure to follow mandatory protocol, documented this severe misconduct, and shared his concerns with superior officers of the Clark County Sheriff's Department. Plaintiff's actions in documenting a matter of grave public safety concern constituted protected speech on a matter of public concern.

18. Upon learning of the documentation, Defendant Elliott threatened Plaintiff, stating, "I'll remember that," and shortly thereafter was promoted to Chief of Detectives, immediately becoming Plaintiff Kramer's direct supervisor.

19. Following Elliott's promotion, Plaintiff Kramer immediately experienced a sustained, targeted pattern of retaliation orchestrated by his new supervisor. This retaliation included public ridicule, ostracization, and the assignment of investigations that were professionally designed not for successful resolution, but to set him up for failure, expose him to criticism, or force him to violate legal principles, including but not limited to:

> a) Misdemeanor DNA Search Warrant Trap: Defendant Elliott assigned Plaintiff Kramer to draft a search warrant for DNA evidence related solely to a misdemeanor criminal mischief case. This assignment was a clear professional trap, intended to ensure the warrant would be summarily rejected and expose Plaintiff to undue criticism or disciplinary action from the courts and his colleagues.
>
> b) The Impossible Henryville Investigation: Plaintiff Kramer was assigned to investigate a shooting incident in Henryville that was known to possess zero viable evidentiary leads, involved no victim cooperation, and had no identifiable suspects. Plaintiff was the sole recipient of this assignment, with no other officers or detectives being assigned to assist in any way. The shooting incident involved the shooting of three (3) separate vehicles while they were traveling upon a public roadway. Plaintiff Kramer was commanded to complete the investigation within

two (2) business days of its assignment. This investigation was intentionally given to Plaintiff with an unreasonable and unattainable expectation of success, solely to consume his investigative time and ensure his professional evaluation would suffer from his inability to 'close' the case.

20. Faced with this unbearable retaliatory environment, Plaintiff Kramer resigned from the CCSD in 2023.

21. Beginning in late 2023, former Clark County Sheriff Jamey Noel became the subject of a massive criminal investigation involving public corruption and misappropriation of funds.

22. Plaintiff Kramer is Noel's brother-in-law; however, their personal relationship is distant and non-cooperative. Significantly, Plaintiff has never been charged with any crime and has never been implicated, investigated, or associated with any of Noel's alleged corrupt business or political dealings throughout the course of this multi-million dollar fraud investigation.

23. The only connection exploited by the Defendants was a single fraudulent pension document. The document itself bears the signature of Plaintiff Kramer, however, Plaintiff Kramer did not date the document. This document was submitted by Noel with a fraudulent date, without Plaintiff Kramer's knowledge, consent, or participation, for the purpose of back-dating Plaintiff's promotion to an earlier date to qualify him for a pension benefit that he had not legitimately earned. Plaintiff was entirely unaware of the existence of this fraudulent representation upon the document until the Defendants' public accusations began.

24. In January 2024, Defendants, including but not limited to MARK GRUBE and other CCSD officials, publicly and falsely accused Plaintiff Kramer of altering a pension document to commit fraud.

25. These accusations were widely publicized and led to a criminal investigation by Defendant INDIANA STATE POLICE.

26. Lieutenant Jeffrey Hearon, an agent of the Defendant ISP, made public statements and allegations that falsely suggested Plaintiff Kramer had knowing involvement in or awareness of the fraudulent pension documentation, thereby actively disseminating the defamatory material.

27. Defendants made these accusations despite multiple officials within the CCSD, including Sheriff Scottie Maples and Lieutenant Colonel Tony Mills, being aware that Mr. Kramer did not and could not have committed the acts in question.

28. As a direct result of the Defendants' false accusations and the resulting media exposure and criminal investigation, Plaintiff Kramer was terminated without cause from his new employment with the Indiana University Police Department (IUPD) in February 2024. This termination caused severe financial and emotional harm, including a lapse in health insurance immediately prior to receiving medical treatment.

29. On or about January 17, 2025, months after the alleged pension fraud investigation had concluded and after Plaintiff was no longer employed by the CCSD, Plaintiff's personal and private iCloud account was accessed without authorization, legal basis, or warrant. This invasion targeted his private, digitally-stored data, far exceeding any potential scope of employment or official duty.

30. This unauthorized access was traced back to a desktop computer owned by the CCSD, specifically identified by its unique identifier as "CCSO_1382," a machine physically located at the CCSD headquarters.

31. The access was achieved maliciously by exploiting Mr. Kramer's former department phone number, which was used as a recovery method to unlawfully bypass security measures and gain entry to his highly private, personal digital files and communications. The identity of the CCSD agent who performed this act is currently unknown but was committed by an agent acting under color of state law.

32. This deliberate, premeditated, and unauthorized intrusion constitutes an egregious illegal search and seizure in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution, demonstrating a clear pattern of official disregard for the constitutional privacy rights of citizens and former employees.

33. The CCSD and the ISP have engaged in a continuous and coordinated effort to defame Mr. Kramer, to tortiously interfere with his employment, and to unlawfully search and seize his personal information.

### *COUNT I: VIOLATION OF 42 U.S.C. § 1983 (FIRST AND FOURTEENTH AMENDMENTS - RETALIATION AND LIBERTY INTEREST)*

34. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

35. Plaintiff's documentation and report of official misconduct was protected speech. The Defendants' adverse actions, including the sustained campaign of false criminal allegations, were a direct retaliation for that speech.

36. The Defendants deprived Plaintiff of his constitutional rights, including his fundamental liberty interest in his reputation, honor, and continued employment under the Fourteenth Amendment. By publicly disseminating false and highly stigmatizing criminal allegations—allegations involving official corruption and fraud—in connection with the termination of his CCSD employment, the Defendants inflicted a 'stigma plus' injury that requires redress under federal law.

37. The conduct of Defendants Erik Elliott, Mark Grube, and Lieutenant Jeffrey Hearon was malicious, willful, and wantonly indifferent to the rights of the Plaintiff.

38. As a direct and proximate result, Plaintiff suffered permanent professional damage, lost wages, benefits, severe pain and suffering, and emotional distress.

### *COUNT II: VIOLATION OF 42 U.S.C. § 1983 (FOURTH AMENDMENT - ILLEGAL SEARCH AND SEIZURE)*

39. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

40. The unauthorized access of Plaintiff's private iCloud account by a computer at the CCSD on or about January 17, 2025, constitutes a warrantless search and seizure of his digital data.

41. This search was performed without probable cause or legal justification and violated the Plaintiff's right to be free from unreasonable searches and seizures guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution.

42. This conduct was part of the continuing, coordinated, and malicious effort by the Defendants to intimidate and harm the Plaintiff.

### *COUNT III: VIOLATION OF 42 U.S.C. § 1983 (MONELL CLAIM AGAINST CLARK COUNTY SHERIFF'S DEPARTMENT)*

43. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

44. Defendant CCSD is liable under 42 U.S.C. § 1983 because the constitutional deprivations suffered by Plaintiff were caused by an unwritten custom, policy, or practice of the CCSD, rather than an isolated act by individual officers.

45. This unwritten custom includes, but is not limited to:

> a) A widespread custom of retaliation and punitive transfer wherein employees who document or speak out on matters of public concern (such as official misconduct, gross negligence, or poor police work) are systemically subjected to adverse employment actions, including impossible assignments, punitive transfers, and ultimately, constructive discharge or the initiation of false, politically-motivated public criminal investigations. This custom functions to enforce a code of silence within the department.

> b) A pervasive custom of deliberate indifference to constitutional rights and data privacy demonstrated by the continued unauthorized use of an official CCSD computer (identified as "CCSO_1382") to unlawfully search and seize the personal, digitally-stored data of a former employee months after his resignation. This action exposes a profound lack of training, supervision, and enforceable policy regarding the sanctity of the Fourth Amendment rights of individuals and the security and lawful use of governmental IT assets.

46. The actions of Defendants Erik Elliott, Mark Grube, and other CCSD officials in coordinating the false public criminal referral and the subsequent illegal search were undertaken pursuant to, and constitute evidence of, this unwritten custom, which was the moving force behind the constitutional violations.

47. As a direct and proximate result of the CCSD's unwritten custom and deliberate indifference, Plaintiff suffered the constitutional deprivations alleged herein.

### *COUNT IV: DEFAMATION (STATE LAW TORT CLAIM)*

48. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

49. Defendants Mark Grube, Lieutenant Jeffrey Hearon, CCSD, and ISP, through their agents, publicly made false and defamatory statements of fact, including but not limited to the accusation that Plaintiff Kramer altered a pension document to commit fraud.

50. These statements were published to third parties, including the public and media, and were made with actual malice or reckless disregard for the truth, as multiple officials within the CCSD were allegedly aware that the Plaintiff did not and could not have committed the acts in question.

51. The statements constitute defamation per se as they accuse Plaintiff of a crime and prejudice him in his profession.

52. As a direct and proximate result of the Defendants' defamation, Plaintiff suffered severe damage to his reputation, professional standing, and emotional distress.

### *COUNT V: TORTIOUS INTERFERENCE WITH CONTRACTUAL/BUSINESS RELATIONSHIP (STATE LAW TORT CLAIM)*

53. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

54. Plaintiff had a valid business relationship and expectation of continued employment with the Indiana University Police Department (IUPD).

55. Defendants Erik Elliott, Mark Grube, Lieutenant Jeffrey Hearon, CCSD, and ISP, through their coordinated actions, including the sustained campaign of false criminal allegations and media exposure, intentionally and maliciously interfered with this business relationship.

56. The Defendants' interference was without justification and proximately caused the IUPD to terminate Plaintiff Kramer's employment.

57. As a direct and proximate result of the Defendants' tortious interference, Plaintiff has suffered significant lost wages, benefits, and severe emotional distress.

### *COUNT VI: INVASION OF PRIVACY / TRESPASS TO CHATTELS (STATE LAW TORT CLAIM)*

58. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

59. Plaintiff had a legitimate expectation of privacy in his personal and private iCloud account and the digital data stored therein.

60. The unauthorized, deliberate, and malicious access of Plaintiff's iCloud account by an agent of the CCSD, using an official CCSD computer ("CCSO_1382"), constitutes an egregious invasion of privacy and a trespass to his digital chattels.

61. This intrusion was highly offensive to a reasonable person and proximately caused Plaintiff emotional distress and fear for the security of his private information.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Bradley Kramer prays for judgment against the Defendants, and each of them, as follows:

   A. For a Trial by Jury on all issues so triable.
   B. For an award of Compensatory Damages against all Defendants, jointly and severally, in an amount sufficient to compensate Plaintiff for all injuries and damages sustained, including but not limited to: i. Lost wages and employment benefits (past and future); ii. Emotional distress, pain, and suffering; iii. Damage to professional reputation and standing.
   C. For an award of Punitive Damages against the individual Defendants, Erik Elliott, Mark Grube, and Lieutenant Jeffrey Hearon, in their individual capacities, for their malicious, willful, and wanton conduct.
   D. For an award of Declaratory Relief, declaring that the Defendants' actions violated the Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

    E.   For an award of Injunctive Relief, compelling the CCSD and ISP to remove all false and defamatory records related to the fraudulent pension document from Plaintiff's personnel file and any public records.

    F.   For an award of Attorneys' Fees and Costs pursuant to 42 U.S.C. § 1988 and all other applicable laws.

    G.   For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

s/ Mickey K. Weber
Mickey K. Weber, #27432-10
SCHAD LAW, P.C.
309 Pearl Street, Second Floor
New Albany, IN  47150
Phone:   (812) 945-4555
Fax:      (727) 897-8031
E-mail:   mweber@schadlaw.com
Attorney for Plaintiff

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

s/ Mickey K. Weber
Mickey K. Weber, #27432-10
SCHAD LAW, P.C.
Attorney for Plaintiff