IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT INDIANA
NEW ALBANY DIVISION

BRADLEY KRAMER,

    *Plaintiff*

v.

ERIK ELLIOTT, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CHIEF OF DETECTIVES OF THE CLARK COUNTY SHERIFF'S DEPARTMENT;
MARK GRUBE, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS ASSISTANT CHIEF OF THE CLARK COUNTY SHERIFF'S DEPARTMENT;
LIEUTENANT JEFFREY HEARON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A DETECTIVE FOR THE INDIANA STATE POLICE;
CLARK COUNTY, INDIANA; AND INDIANA STATE POLICE,

    *Defendants*

CASE NO. 4:26-CV-00023-TWP-KMB

---

## AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

---

## INTRODUCTION, JURISDICTION, AND VENUE

1.     This is a civil rights action seeking substantial damages under 42 U.S.C. § 1983 to address

a coordinated campaign of official retaliation and misconduct, coupled with related state law tort

claims. Plaintiff seeks to redress the deprivation of his fundamental rights, privileges, and immunities secured by the Constitution and laws of the United States, including the First Amendment's protection of free speech, the Fourth Amendment's guarantee against illegal search and seizure, and the Fourteenth Amendment's guarantee of due process and liberty interest in reputation and employment.

2.  This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

3.  This Court has supplemental jurisdiction over the related state law tort claims pursuant to 28 U.S.C. § 1367.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in Clark County, Indiana, within this District, and because the Defendants reside in and/or are employed by governmental entities located within this District.

**PARTIES**

5.  Plaintiff, BRADLEY KRAMER, is an adult resident of Clark County, Indiana, and was employed by the Clark County Sheriff's Department for nine years, serving primarily as a Detective in the Investigations Division, resigning in 2023.

6.  Defendant ERIK ELLIOTT is an adult individual who was, at all times relevant to the Complaint, acting under color of state law. At the commencement of the events alleged herein, Defendant Elliott served as a detective and superior to Plaintiff Kramer within the CCSD. During the course of the conduct complained of herein, Defendant Elliott was promoted to Chief

of Detectives for the Clark County Sheriff's Department, at which point he became Plaintiff's immediate supervisor. Defendant Elliott is sued in his individual capacity for his own malicious and unconstitutional acts, and in his official capacity as a representative of the policy-making authority of Clark County, Indiana, regarding investigations and internal management.

7.    Defendant MARK GRUBE is an adult individual who was, at all times relevant to the Complaint, acting under color of state law as Assistant Chief of the Clark County Sheriff's Department. Defendant Grube is sued in his individual capacity for his actions in initiating and disseminating false allegations, and in his official capacity as a policymaking officer of Clark County, Indiana.

8.    Defendant CLARK COUNTY, INDIANA is a unit of local government and political subdivision of the State of Indiana. The Clark County Sheriff's Department ("CCSD") is the law enforcement arm of Clark County, Indiana. Clark County, Indiana is responsible for the training, supervision, discipline, and oversight of CCSD officers and agents and is subject to suit under 42 U.S.C. § 1983 for constitutional violations resulting from its official customs, policies, and practices. Clark County, Indiana is substituted herein for the incorrectly named defendant "Clark County Sheriff's Department," which lacks independent legal capacity to be sued under Indiana law. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). References to "CCSD" herein refer to the Clark County Sheriff's Department as an operational entity within Clark County, Indiana.

9.    Defendant LIEUTENANT JEFFREY HEARON is an adult individual who was, at all times relevant to the Complaint, acting under color of state law as a Lieutenant and Detective of the Indiana State Police. Defendant Hearon is sued in his individual capacity for his participation

in defamation and his reckless disregard for the constitutional rights of Plaintiff, and in his official capacity as a representative of ISP.

10.     Defendant INDIANA STATE POLICE ("ISP") is a state law enforcement agency that, through its agents, most notably Lieutenant Jeffrey Hearon, participated in the systematic and coordinated scheme to defame Plaintiff and interfere with his employment. ISP is named as a Defendant for the purposes of the state law tort claims alleged herein to the extent permitted by applicable law, and for purposes of any available prospective relief under federal law.

**STATEMENT OF FACTS**

11.     Plaintiff Bradley Kramer was an employee of the CCSD for approximately nine (9) years, serving primarily as a Detective in the Investigations Division.

12.     Throughout the majority of his tenure, Mr. Kramer maintained an exemplary record and performance rating, consistently earning the respect of his peers and superiors for his commitment to professional, non-political law enforcement standards.

13.     The events leading to the violations of Plaintiff's constitutional rights began in 2022 when Plaintiff independently discovered and reported serious misconduct by then-Detective Erik Elliott in a case to which Plaintiff had not been assigned and for which Plaintiff bore no official responsibility. The facts of Plaintiff's speech and reporting are described in detail below and establish that Plaintiff was acting as a private citizen on a matter of grave public concern, not pursuant to his official job duties.

14.     In January 2022, a case was opened bearing Case No. 2022-67, concerning a missing and endangered juvenile, M.S., who had last been seen in Clark County, Indiana. Case No. 2022-67

4

was assigned solely to then-Detective Erik Elliott. Plaintiff Kramer had no prior knowledge of Case No. 2022-67, was not assigned as a detective on the case, had no supervisory role over the case, and had no official duties with respect to the case. Reporting on another detective's handling of an assigned case was not ordinarily within the scope of Plaintiff's employment responsibilities.

15. Established law enforcement protocol, mandatory training standards, and state regulations require immediate, urgent action in missing and endangered juvenile cases. Defendant Elliott flagrantly disregarded this mandatory protocol, completely refusing to even speak with the family of the missing juvenile.

16. When M.S.'s custodial grandfather came to the CCSD Detective Division seeking assistance in locating the missing child, Defendant Elliott, who was assigned to Case No. 2022-67 and was present at the time, diverted the grandfather to Plaintiff Kramer on an ad hoc, unauthorized basis, without assigning Plaintiff to the case or giving Plaintiff any official role in the investigation. Defendant Elliott redirected the grandfather to Plaintiff Kramer without investigating. After the grandfather departed, Defendant Elliott told Plaintiff Kramer, in substance and using profane and derogatory terms, that M.S. had merely traveled out of state, there was nothing to be concerned about, that the grandfather was not credible, and that Plaintiff need not follow up because the matter was not Plaintiff's case.

17. Defendant Elliott's verbal representations to Plaintiff Kramer that M.S. was safe and traveling out of state were made without any verification. No investigation had been conducted. No contact with the juvenile or the juvenile's family had been made beyond the grandfather's visit. M.S.'s remains were later discovered in Clark County, Indiana, indicating that the juvenile

had never left the county. Defendant Elliott's failure to investigate and his false verbal representations constituted gross professional misconduct, a severe dereliction of duty, and a profound breach of public trust.

18.    That same day, upon learning of Defendant Elliott's failure to investigate and his false claims regarding M.S.'s whereabouts, Plaintiff Kramer, on his own initiative and not pursuant to any official assignment or directive from Defendant Elliott, documented the misconduct. Case No. 2022-67 was not Plaintiff's assigned case. Plaintiff had no supervisory authority over Defendant Elliott and no assigned responsibility for reviewing the work of other detectives. Reviewing and reporting on another detective's misconduct in a case he was never assigned to was not ordinarily within the scope of Plaintiff's employment duties. Elliott expressly told Plaintiff that the matter was not his concern.

19.    Plaintiff documented Defendant Elliott's failure to follow mandatory missing juvenile protocols and his verbal representations (ultimately proven to be false) that M.S. was safe, and shared his concerns with superior officers of the Clark County Sheriff's Department. Plaintiff's actions in documenting and reporting a matter of grave public safety concern, specifically the death of a child that might have been prevented by proper investigative protocols and the cover-up of officer misconduct, constituted protected speech by a private citizen on a matter of public concern. *See Lane v. Franks*, 573 U.S. 228, 240 (2014); *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). This speech was not made pursuant to Plaintiff's official duties.

20.    Upon learning that Plaintiff had documented and reported his misconduct, Defendant Elliott threatened Plaintiff, stating, "I'll remember that," and shortly thereafter was promoted to Chief of Detectives, immediately becoming Plaintiff Kramer's direct supervisor. Thus, the very

officer whose serious misconduct Plaintiff had reported was placed in direct authority over Plaintiff's career.

21.  Following Elliott's promotion, Plaintiff Kramer immediately experienced a sustained, targeted pattern of retaliation orchestrated by his new supervisor. This retaliation included public ridicule, ostracization, and the assignment of investigations that were professionally designed not for successful resolution, but to set him up for failure, expose him to criticism, or force him to violate legal principles, including but not limited to:

a)  Misdemeanor DNA Search Warrant Trap: Defendant Elliott assigned Plaintiff Kramer to draft a search warrant for DNA evidence related solely to a misdemeanor criminal mischief case. This assignment was a clear professional trap, intended to ensure the warrant would be summarily rejected and expose Plaintiff to undue criticism or disciplinary action from the courts and his colleagues.

b)  The Impossible Henryville Investigation: Plaintiff Kramer was assigned to investigate a shooting incident in Henryville that was known to possess zero viable evidentiary leads, involved no victim cooperation, and had no identifiable suspects. Plaintiff was the sole recipient of this assignment, with no other officers or detectives assigned to assist in any way. Plaintiff Kramer was commanded to complete the investigation within two (2) business days of its assignment. This investigation was intentionally given to Plaintiff with an unreasonable and unattainable expectation of success, solely to consume his investigative time and ensure his professional evaluation would suffer.

c) Menial Punishment Detail: Defendant Elliott directed Plaintiff Kramer to hand-wash the undercarriage of his patrol vehicle while wearing dress clothes, an assignment unrelated to any legitimate investigative duty and designed to humiliate Plaintiff in front of fellow officers.

d) Public Humiliation: Defendant Grube called Plaintiff Kramer "lazy" in front of Plaintiff's subordinate officers, despite Plaintiff having investigated more cases than any other detective year-to-date at that time.

e) Brittany Bowman Search Warrant Sabotage: In connection with the Brittany Bowman murder case, Plaintiff Kramer had obtained a search warrant for cellular data that carried a strict execution deadline. Defendant Elliott refused to allow Plaintiff to execute the warrant within the required timeframe. After the deadline had expired and the data was no longer available, Defendant Elliott then instructed Plaintiff to execute the now-futile warrant, ensuring the failure of a critical piece of evidence in a homicide investigation.

22. Faced with this unbearable retaliatory environment, Plaintiff Kramer resigned from the CCSD in 2023.

23. Beginning in late 2023, former Clark County Sheriff Jamey Noel became the subject of a massive criminal investigation involving public corruption and misappropriation of funds, conducted by the Indiana State Police.

24. Plaintiff Kramer was Noel's brother-in-law; however, their personal relationship was distant and non-cooperative. Plaintiff has never been charged with any crime and has never been

implicated, investigated as a target, or associated with any of Noel's alleged corrupt business or political dealings throughout the course of this multi-million dollar fraud investigation.

25.    The only connection exploited by the Defendants was a single fraudulent pension document. The document itself bears the signature of Plaintiff Kramer; however, Plaintiff Kramer did not date the document. This document was submitted by Noel with a fraudulent date, without Plaintiff Kramer's knowledge, consent, or participation, for the purpose of back-dating Plaintiff's promotion to an earlier date to qualify him for a pension benefit that he had not legitimately earned. Plaintiff was entirely unaware of the existence of this fraudulent representation upon the document until the Defendants' public accusations began.

26.    In or about January 2024, Defendant MARK GRUBE, acting in his official capacity as Assistant Chief of the Clark County Sheriff's Department, publicly and falsely accused Plaintiff Kramer of knowingly altering a pension document to commit fraud. These false accusations were made to and through media outlets, members of the public, and law enforcement personnel. At the time Defendant Grube made these false accusations, Defendant Grube was fully aware, or acted with reckless disregard for the truth, that Plaintiff Kramer had not knowingly participated in any pension document fraud.

27.    Defendant Grube and other CCSD officials directed false criminal allegations against Plaintiff to the Indiana State Police and to the public and media, which led to a high-profile criminal investigation by Defendant INDIANA STATE POLICE.

28.    On or about April 6, 2024, Clark County Sheriff Scottie Maples, acting in his official capacity as the elected Sheriff and chief policymaker of the Clark County Sheriff's Department, and therefore a direct policymaker of Clark County, Indiana, called Indiana State Representative

Zach Payne and communicated to Payne that Plaintiff Kramer had not committed the alleged fraud and that it was impossible for him to have done so. Despite this knowledge, Sheriff Maples took no steps to correct the false public accusations against Plaintiff and allowed the defamatory campaign to continue.

29.   On or about June 6, 2024, Lieutenant Colonel Tony Mills stopped Plaintiff in a parking lot and communicated to him that multiple senior CCSD officials knew Plaintiff had not committed the alleged fraud. When Plaintiff asked which officials, Mills identified himself, Sheriff Scottie Maples, Assistant Chief Mark Grube, and Chief Randy Thomas. Plaintiff asked Mills to put this statement in writing. Mills declined. This conversation confirms that Defendant Grube, among other senior CCSD officials, was personally aware that the accusations against Plaintiff were false at the time those accusations were being made publicly. Despite this actual knowledge of falsity, Defendant Grube continued to disseminate false allegations against Plaintiff.

30.   Lieutenant Jeffrey Hearon, as the lead ISP investigator and public spokesperson for the ISP Noel investigation, made public statements and allegations to media outlets and others that falsely stated or clearly implied that Plaintiff Kramer had knowing involvement in or awareness of the fraudulent pension documentation, thereby actively disseminating defamatory material. These statements were made despite ISP's awareness that Plaintiff Kramer's signature on the document was obtained without his knowledge or consent as to the backdated date.

31.   ISP policy prohibits its officers from disseminating information that is not disclosable to the public outside the chain of command. Defendant Hearon's public statements and disclosures regarding Plaintiff were made in violation of this established ISP policy and without authorization from ISP leadership.

32. Defendants made these false accusations despite multiple senior CCSD officials, including Sheriff Scottie Maples, Assistant Chief Mark Grube, Lieutenant Colonel Tony Mills, and Chief Randy Thomas, being personally aware that Mr. Kramer did not and could not have committed the acts in question. Mills confirmed this directly to Plaintiff on June 6, 2024, identifying each of these officials by name.

33. As a direct result of the Defendants' false accusations and the resulting media exposure and criminal investigation, Plaintiff Kramer was terminated without cause from his employment with the Indiana University Police Department (IUPD) in February 2024. This termination caused severe financial and emotional harm, including a lapse in health insurance immediately prior to receiving medical treatment.

34. As a further direct result of Defendants' false accusations, Plaintiff Kramer has been unable to obtain employment in any law enforcement capacity since his February 2024 IUPD termination. The false and stigmatizing public accusations of criminal fraud by state officials, combined with ISP's ongoing criminal investigation, have effectively blacklisted Plaintiff from the law enforcement profession in Indiana and made it virtually impossible for him to pursue his chosen career.

35. On September 23, 2025, Plaintiff applied for a reserve police officer position with the Harrison County Sheriff's Department. During the interview process, Lieutenant Yeager of the Harrison County Sheriff's Department advised Plaintiff that he had been told by the Indiana State Police that Plaintiff had personally submitted false and/or altered pension paperwork. This statement was made despite the pension fraud allegation against Plaintiff having been refuted. ISP's continued dissemination of false accusations to other law enforcement agencies as late as

September 2025 confirms the ongoing nature of Defendants' campaign and its direct, continuing effect on Plaintiff's ability to obtain employment in his chosen profession.

36.    On or about January 17, 2025, months after the alleged pension fraud investigation had concluded and after Plaintiff was no longer employed by the CCSD, Plaintiff's personal and private iCloud account was accessed without authorization, legal basis, or warrant. This invasion targeted his private, digitally-stored data, far exceeding any potential scope of employment or official duty.

37.    This unauthorized access was traced back to a desktop computer owned by the CCSD, specifically identified by its unique identifier as "CCSO_1382," a machine physically located at the CCSD headquarters.

38.    The access was achieved maliciously by exploiting Mr. Kramer's former CCSD department phone number, which had been used as a two-factor authentication recovery method to unlawfully bypass security measures and gain entry to his highly private, personal digital files and communications. This recovery phone number was part of Plaintiff's CCSD employment records, accessible only to current CCSD personnel with access to employment or personnel files. The exploitation of this internal employment record to bypass iCloud security demonstrates that the intrusion was conducted by someone with access to Plaintiff's CCSD personnel information, a CCSD agent or someone acting at the direction of CCSD personnel with such access. CCSD Information Technology personnel, including Daniel Collins, an IT employee of the Clark County Sheriff's Office with administrative access to and operational authority over CCSO_1382, are among those with knowledge of the intrusion and will be identified through

discovery. The identity of the specific CCSD agent who performed this act is currently unknown but will be established through discovery.

39. At the time of the January 17, 2025 intrusion, Plaintiff's personal iCloud account contained private personal communications and messages, personal photographs, financial documents and records, health and medical information, personal notes and documents, and other highly sensitive private information. The account was accessed without Plaintiff's knowledge or consent.

40. This deliberate, premeditated, and unauthorized intrusion constitutes an egregious illegal search and seizure in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution, demonstrating a clear pattern of official disregard for the constitutional privacy rights of citizens and former employees.

41. The CCSD and the ISP have engaged in a continuous and coordinated effort to defame Mr. Kramer, to tortiously interfere with his employment, and to unlawfully search and seize his personal information, constituting an ongoing scheme of retaliation traceable to Plaintiff's protected speech in 2022.

### COUNT I: VIOLATION OF 42 U.S.C. § 1983
### (FIRST AND FOURTEENTH AMENDMENTS — RETALIATION AND LIBERTY INTEREST)

42. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

43. Plaintiff's documentation of Defendant Elliott's misconduct in Case No. 2022-67, and his report of that misconduct to superior officers, was protected speech. As described in paragraphs

14–19, this speech was not made pursuant to Plaintiff's official job duties: Case No. 2022-67 was not Plaintiff's assigned case; Plaintiff had no official role in or responsibility for the investigation; Plaintiff had no supervisory authority over Defendant Elliott; and reporting on another detective's misconduct in a case to which Plaintiff was never assigned was not ordinarily within the scope of Plaintiff's employment. *Lane v. Franks*, 573 U.S. 228, 240 (2014). Plaintiff's speech addressed matters of gravest public concern: the welfare of a missing juvenile who was later found deceased, the false representations made to conceal officer dereliction, and the integrity of law enforcement operations. The Defendants' adverse actions, including the sustained campaign of false criminal allegations, were a direct retaliation for that speech.

44.    The Defendants deprived Plaintiff of his constitutional rights, including his fundamental liberty interest in his reputation, honor, and continued employment under the Fourteenth Amendment. By publicly disseminating false and highly stigmatizing criminal allegations, allegations involving official corruption and fraud, in connection with the loss of his employment, the Defendants inflicted a 'stigma plus' injury that requires redress under federal law. The combined effect of the public false criminal accusations by state actors, the state-directed criminal investigation, and the resulting termination from IUPD and effective blacklisting from law enforcement employment has made it virtually impossible for Plaintiff to pursue his chosen profession in law enforcement. Plaintiff has been unable to obtain law enforcement employment since February 2024, demonstrating the catastrophic effect of Defendants' stigmatizing conduct on his occupational liberty. *Martin v. Haling*, 94 F.4th 667, 671 (7th Cir. 2024).

45.    The conduct of Defendants Erik Elliott, Mark Grube, and Lieutenant Jeffrey Hearon was malicious, willful, and wantonly indifferent to the rights of the Plaintiff.

14

46.    As a direct and proximate result, Plaintiff suffered permanent professional damage, lost wages, benefits, severe pain and suffering, and emotional distress.

## COUNT II:  VIOLATION OF 42 U.S.C. § 1983
### (FOURTH AMENDMENT — ILLEGAL SEARCH AND SEIZURE)

47.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

48.    The unauthorized access of Plaintiff's private iCloud account by a CCSD agent using a computer at the CCSD on or about January 17, 2025, constitutes a warrantless search of his digital data in violation of the Fourth Amendment. Plaintiff had a reasonable and objectively justified expectation of privacy in his personal iCloud account. *Carpenter v. United States*, 585 U.S. 296 (2018).

49.    This search was performed without probable cause, legal justification, warrant, or subpoena, and violated Plaintiff's right to be free from unreasonable searches and seizures guaranteed by the Fourth and Fourteenth Amendments of the U.S. Constitution.

50.    This conduct was part of the continuing, coordinated, and malicious effort by the Defendants to intimidate and harm the Plaintiff. The use of a CCSD computer and CCSD employment records to accomplish the intrusion establishes that the act was performed under color of state law. The individual defendant(s) responsible for directing or performing this intrusion will be identified through discovery.

### COUNT III: VIOLATION OF 42 U.S.C. § 1983
### (MONELL CLAIM AGAINST CLARK COUNTY, INDIANA)

51.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

52.     Defendant Clark County, Indiana is liable under 42 U.S.C. § 1983 because the constitutional deprivations suffered by Plaintiff were caused by an unwritten custom, policy, or practice of the CCSD, and/or by the deliberate acts of final policymakers for Clark County, Indiana, rather than isolated acts by individual officers. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

53.     This unwritten custom includes, but is not limited to:

a)   A widespread custom of retaliation and punitive treatment of employees who document or speak out on matters of public concern (such as official misconduct, gross negligence, or poor police work), whereby such employees are systematically subjected to adverse employment actions, including impossible assignments, punitive transfers, constructive discharge, and the initiation of false, politically-motivated public criminal investigations. This custom functions to enforce a code of silence within the department. Evidence of this custom includes: (i) Defendant Elliott's promotion to Chief of Detectives immediately after threatening Plaintiff for reporting Elliott's misconduct, evidencing that CCSD leadership endorsed and rewarded retaliation; (ii) Defendant Grube's coordination of public false criminal accusations against Plaintiff in his official capacity as Assistant Chief; and (iii) the use of official

CCSD resources to conduct ongoing surveillance of Plaintiff more than a year after his resignation.

b)    A pervasive custom of deliberate indifference to constitutional rights and data privacy demonstrated by the continued unauthorized use of an official CCSD computer (CCSO_1382) to unlawfully search and seize the personal, digitally-stored data of a former employee months after his resignation. This action exposes a profound lack of training, supervision, and enforceable policy regarding the sanctity of the Fourth Amendment rights of individuals and the security and lawful use of governmental IT assets. No action has been taken against any CCSD personnel regarding the January 17, 2025 intrusion, notwithstanding that it is traceable to a specific identified CCSD computer, demonstrating deliberate indifference to the constitutional violation.

54.    The actions of Defendants Erik Elliott, Mark Grube, and other CCSD officials in coordinating the false public criminal referral and the subsequent illegal search, and the actions of Clark County Sheriff Scottie Maples in making false public accusations to a state legislator with actual knowledge of Plaintiff's innocence, were undertaken pursuant to and constitute evidence of the unwritten customs described above, which were the moving force behind the constitutional violations. Maples' statement as the final policymaker of the CCSD directly triggers municipal liability for Clark County, Indiana.

55.    As a direct and proximate result of Clark County's unwritten customs and the deliberate acts of its final policymakers, Plaintiff suffered the constitutional deprivations alleged herein.

## COUNT IV: DEFAMATION
### (STATE LAW TORT CLAIM)

56. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

57. Defendants Mark Grube (individually and through his official capacity at CCSD), Clark County, Indiana (through its agents and policymakers including Sheriff Maples), and Lieutenant Jeffrey Hearon, publicly made false and defamatory statements of fact, specifically:

   a) Defendant Grube, in or about January 2024, publicly stated and/or caused to be stated that Plaintiff Kramer had knowingly altered a pension document to commit fraud, making these statements to media outlets, law enforcement agencies, and the general public;

   b) b) On or about April 6, 2024, Clark County Sheriff Scottie Maples, acting as the final policymaker of Clark County's law enforcement agency, confirmed to Indiana State Representative Zach Payne that Plaintiff Kramer had not committed the alleged fraud and that it was impossible for him to have done so. This statement — by the county's final policymaker — establishes that Clark County possessed actual knowledge of Plaintiff's innocence while Defendant Grube and others acting under CCSD authority continued to publicly disseminate the false accusations described in subparagraph (a). Maples' statement is set forth here as evidence of actual malice and is incorporated by reference into Count III (Monell);

   c) Defendant Jeffrey Hearon, as the lead ISP investigator on the Noel corruption investigation, made public statements to media outlets and others stating or clearly

18

implying that Plaintiff Kramer had knowing involvement in or awareness of the fraudulent pension documentation, notwithstanding that the evidence in ISP's possession was inconsistent with such a conclusion.

58.    These statements were published to third parties, including the public, media, a member of the Indiana General Assembly, and law enforcement agencies, and were made with actual malice or reckless disregard for the truth. As to Sheriff Maples and the CCSD officials, actual malice is established by the allegation that multiple CCSD officials, including Sheriff Maples himself and Lieutenant Colonel Tony Mills, were expressly aware that Plaintiff Kramer did not and could not have committed the alleged fraud at the time these accusations were publicly disseminated.

59.    The statements constitute defamation per se as they accuse Plaintiff of a crime and prejudice him in his profession as a law enforcement officer.

60.    As a direct and proximate result of the Defendants' defamation, Plaintiff suffered severe damage to his reputation, professional standing, loss of employment, inability to obtain law enforcement employment, and emotional distress.

## COUNT V: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP (STATE LAW TORT CLAIM)

61.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

62.    Plaintiff had a valid business relationship and expectation of continued employment with the Indiana University Police Department (IUPD).

63.     Defendants knew of Plaintiff's employment relationship with IUPD. Specifically: (i) Plaintiff's transition from CCSD to IUPD was a matter of professional record accessible to CCSD and ISP personnel; (ii) the Indiana State Police, acting in coordination with CCSD Defendants, obtained and served a search warrant on Indiana University on or about January 22, 2024, affirmatively targeting Plaintiff's employer in connection with the investigation, thereby demonstrating that both ISP and its CCSD counterparts had knowledge of Plaintiff's IUPD employment relationship at the time of the false public accusations.

64.     Defendants, through their coordinated actions, including the sustained campaign of false criminal allegations and media exposure, intentionally and maliciously interfered with this business relationship. Specifically, by coordinating public false criminal accusations and publicizing them to the media and law enforcement community, and by causing or contributing to the ISP search warrant served on IU, Defendants intentionally interfered with Plaintiff's employment with IUPD.

65.     The Defendants' interference was without justification. The absence of justification is evidenced by: (i) multiple CCSD officials, including Sheriff Maples, knew at the time of the false public accusations that Plaintiff was innocent of the alleged fraud; (ii) there was no legitimate law enforcement purpose served by publicly accusing an innocent person of fraud while contemporaneously knowing he was innocent; and (iii) Defendant Grube and other CCSD officials, acting in their official capacities, made false public accusations for the purpose of harming Plaintiff.

66.     The Defendants' tortious interference proximately caused the IUPD to terminate Plaintiff Kramer's employment.

67.    As a direct and proximate result of the Defendants' tortious interference, Plaintiff has suffered significant lost wages, benefits, and severe emotional distress.

## COUNT VI: INVASION OF PRIVACY / TRESPASS TO CHATTELS
### (STATE LAW TORT CLAIM)

68.    Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

69.    Plaintiff had a legitimate expectation of privacy in his personal and private iCloud account and the digital data stored therein.

70.    The unauthorized, deliberate, and malicious access of Plaintiff's iCloud account by a CCSD agent, using an official CCSD computer (CCSO_1382) and exploiting Plaintiff's former CCSD department phone number to bypass two-factor authentication, constitutes an egregious invasion of privacy (intrusion upon seclusion) and a trespass to his digital chattels. The account contained personal communications and messages, personal photographs, financial documents, health and medical information, and other highly sensitive private material.

71.    This intrusion was highly offensive to a reasonable person. The deliberate exploitation of former employment records to gain unauthorized access to a private individual's personal cloud account more than one year after his resignation, for no legitimate investigative purpose, is the digital equivalent of breaking into a former employee's home to search private files. The act of accessing the account constitutes an illegal search under Indiana law. *Curry v. Whitaker*, 943 N.E.2d 354, 358 (Ind. Ct. App. 2011).

21

72. The unauthorized access of Plaintiff's iCloud account by use of an official CCSD computer also constitutes computer trespass as defined by Indiana Code § 35-43-2-3, in that a CCSD agent knowingly or intentionally accessed Plaintiff's computer network, computer program, or data without Plaintiff's consent and with intent to defraud or harm. Plaintiff is entitled to bring a civil action for damages resulting from this computer trespass pursuant to Indiana Code § 34-24-3-1.

73. This intrusion proximately caused Plaintiff emotional distress, fear for the security of his private communications and sensitive personal information, and ongoing concern that private information was viewed, copied, or otherwise compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bradley Kramer prays for judgment against the Defendants, and each of them, as follows:

A. For a Trial by Jury on all issues so triable.

B. For an award of Compensatory Damages against all Defendants, jointly and severally, in an amount sufficient to compensate Plaintiff for all injuries and damages sustained, including but not limited to: (i) lost wages and employment benefits (past and future); (ii) emotional distress, pain, and suffering; (iii) damage to professional reputation and standing; and (iv) the cost of medical and psychological treatment necessitated by Defendants' conduct.

C.   For an award of Punitive Damages against the individual Defendants, Erik Elliott, Mark Grube, and Lieutenant Jeffrey Hearon, in their individual capacities, for their malicious, willful, and wanton conduct.

D.   For an award of Declaratory Relief, declaring that the Defendants' actions violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

E.   For an award of Injunctive Relief, compelling Clark County, Indiana, and the CCSD to remove all false and defamatory records related to the fraudulent pension document from Plaintiff's personnel file and any CCSD-maintained public records.

F.   For an award of Attorneys' Fees and Costs pursuant to 42 U.S.C. § 1988 and all other applicable laws.

G.   For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

s/ Mickey K. Weber
Mickey K. Weber, #27432-10
SCHAD LAW, P.C.
309 Pearl Street, Second Floor
New Albany, IN  47150
(812) 945-4555 / Fax (727) 897-8031
mweber@schadlaw.com
Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ Mickey K. Weber</u>
Mickey K. Weber